1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY R. JONES,                      No.  2:09-cv-03256-MCE-JFM

12                  Plaintiff,

13       v.                                 FINDINGS & RECOMMENDATIONS

14   LT. B. ROSZKO, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims that defendants violated his rights under the Eighth Amendment

19   by failing to protect him in connection with a physical altercation plaintiff was involved in with

20   three other inmates on August 2, 2008.[1]  This matter is before the court on defendants' motion for

21   summary judgment.  ECF No. 48.  Plaintiff opposes the motion.  ECF Nos. 49, 53.  Moreover,

22   plaintiff's Third Amended Complaint, ECF No. 17, is verified under penalty of perjury.  See

23   Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.1995) (holding that a complaint or motion

24   duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing

25   _____

     [1] Plaintiff alleges in his Third Amended Complaint that the defendants had also violated his due
26   process rights.  (ECF No. 17.)  In an order dated September 25, 2012, ECF No. 36, the district
     judge adopted in full this court's Findings and Recommendations, ECF No. 33, recommending
27   the dismissal of all of plaintiff's due process claims. The only claims surviving that dismissal are
     plaintiff's Eighth Amendment claims against defendants Arthur, Brown, Fernandez, Roszko, and
28   Sisto addressed herein.

                                              1

1  affidavit under Fed. R. Civ. P. 56).[2]  Plaintiff has also filed a motion styled as a "Money

2  Judgment from Arthur, Brown, Fernandez, Rozsko, and Sisto," ECF No. 50, which the court

3  construes as a cross-motion for summary judgment and addresses herein.[3]

4  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

5  Summary judgment is appropriate when the moving party "shows that there is no genuine

6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

7  Civ. P. 56(a).

8  Under summary judgment practice, the moving party "initially bears the burden of

9  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

10  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

11  The moving party may accomplish this by "citing to particular parts of materials in the record,

12  including depositions, documents, electronically stored information, affidavits or declarations,

13  stipulations (including those made for purposes of the motion only), admissions, interrogatory

14  answers, or other materials" or by showing that such materials "do not establish the absence or

15  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

16  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

17  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

18  the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);

19  see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

20  

---

21  [2] Even though plaintiff's complaint is verified, it may function as a supporting affidavit for
22  purposes of summary judgment only to the extent that it is "based on personal knowledge and
   set[s] forth specific facts admissible in evidence."  Schroeder, 55 F.3d at 460 (citations omitted).

23  [3] In this motion plaintiff erroneously claims that the district judge's September 25, 2012 order,
24  ECF No. 36, partially denying defendants' motion to dismiss, ECF No. 29, constituted summary
   judgment in plaintiff's favor, therefore entitling him to a money judgment from defendants.  At
25  the end of this motion plaintiff requests that the court "[g]ive plaintiff a [sic] order for a judgment
   for pain . . . ."  ECF No. 50 at 2.  Plaintiff also states that he has already submitted evidence that
26  was "never disputed until now" and argues that his evidence shows that the defendants are liable.
   Id.  Liberally construed, it appears plaintiff requests summary judgment in his favor.
27  Accordingly, the court treats plaintiff's motion as a motion for summary judgment despite the fact
   that plaintiff fails to append any evidence to either this motion or his two filings in opposition to
28  defendants' motion to dismiss, ECF Nos. 49, 53.

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

long as whatever is before the district court demonstrates that the standard for entry of summary

judgment, . . ., is satisfied."  Id. at 323.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (citations omitted).

   "In evaluating the evidence to determine whether there is a genuine issue of fact," the

court draws "all reasonable inferences supported by the evidence in favor of the non-moving

party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

1    the opposing party's obligation to produce a factual predicate from which the inference may be

2    drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

3    aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

4    party "must do more than simply show that there is some metaphysical doubt as to the material

5    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

6    nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

7    omitted).

8         On August 3, 2012, the court advised plaintiff of the requirements for opposing a motion

9    pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934

10   (9th Cir. 2012); see also Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert.

11   denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

12                                          ANALYSIS

13   I. FACTS[4]

14        The following facts are undisputed unless otherwise noted.  At all times relevant to this

15   action plaintiff was a state prisoner confined at California State Prison, Solano (CSP-Solano) and

16   defendants were employed by the California Department of Corrections and Rehabilitation

17   (CDCR) working at CSP-Solano.  Plaintiff was an inmate at CSP-Solano from 1999 to 2009 and,

18   during this time, was assigned to Facility 3, which houses inmates who make up the prison's

19   general population.  Deposition of Anthony Jones at deposition pages 10:17-22; 25:18-20

20   (attached to Decl. of Leslie Wagley (ECF No. 48-7) as Ex. A) (hereinafter "Jones Deposition").

21   General population inmates housed in Facility 3 are subject to dormitory-style living

22   arrangements and are assigned to bunks instead of cells.  Id. at 25:18-22.  Prior to April 2008,

23   plaintiff was housed in Building 15 of Facility 3, worked as a barber for the other inmates, and

24   _____

25   [4] The following facts are based entirely on defendants' statement of undisputed facts (ECF No.
     48-3), defendants' supporting declarations and deposition (ECF Nos. 48-4, 43-5, 43-6, 43-7), and

26   plaintiff's third amended complaint (ECF No. 17), which plaintiff has signed under penalty of
     perjury.  Plaintiff in his opposition filings (ECF Nos. 49, 53) has failed to contest any of the

27   undisputed facts proffered by defendants.  Furthermore, plaintiff does not offer his own
     declarations or other evidence beyond his verified complaint for consideration by the court in

28   addressing defendants' motion for summary judgment.

                                            4

1  had been housed in Facility 3 without any altercations or other disciplinary issues for nine years.

2  Id. at 11:19-22, 12:12-14, 67:15-20, 68:13-15.

3       On April 10, 2008, a lock-up order authored by Rozsco was issued against plaintiff

4  regarding an investigation of a conspiracy to introduce contraband into the prison.  As a result of

5  this order, plaintiff was sent to the Administrative Segregation Unit (ASU) and remained there for

6  five months while an investigation into the matter by the Office of Internal Affairs was pending.

7  Decl. of B. Rozsko (ECF No. 48-6) at ¶4, Exhibit A; Decl. of Arthur (ECF No. 48-5) at ¶4,

8  Exhibit A; Jones Deposition at 16:8-10.  Plaintiff claims that while he was in the ASU, he

9  received threats from correctional officers Chavez and Velasquez and other, unidentified officers.

10  Jones Deposition at 21:10-20.  Plaintiff filed grievances and sent correspondence to Warden Sisto

11  regarding these alleged threats; he later received a response from Associate Warden Singh stating

12  that an inquiry into his claims was conducted and his allegations were deemed unsubstantiated.

13  Id. at 141:2-14, 144:11-19.

14       Once the investigation regarding the conspiracy was completed, CSP-Solano was

15  informed by the Office of Internal Affairs that there was no evidence that plaintiff participated in

16  the conspiracy.  Decl. of Arthur at ¶¶5-6.  As a result of these findings, plaintiff was assigned by

17  an Institution Classification Committee (ICC) back into the general population in Facility 3 on

18  July 31, 2008, and was released from the ASU on August 1, 2008.  Id.  Defendants state that

19  plaintiff was in agreement with this decision to release him back into Facility 3; however,

20  plaintiff contends that he did not agree with being released back onto Facility 3.  Id. at ¶6, Exhibit

21  B; Jones Deposition at 33:1-12.  Plaintiff was initially assigned an upper bunk in Building 16 of

22  Facility 3.  Decl. of Rozsko at ¶5.  However, plaintiff was re-housed in a lower bunk in Building

23  17 after he showed prison staff medical documents showing that he had medical need for a lower

24  bunk.  Id.; Jones Deposition at 35:21-36:2.  Later that day, plaintiff approached prison staff and

25  told them that he was having compatibility problems in Building 17 because the bunk he was

26  assigned to had not been vacated by the inmate previously assigned to it.  Decl. of Rozsko at ¶5;

27  Jones Deposition at 42:19-25.  Plaintiff claimed that a group of unidentified inmates were

28  protesting his assignment to that bunk.  Jones Deposition at 44:9-20.  As a result of this, plaintiff

1   was again rehoused to a lower bunk in Building 16.  Decl. of Rozsko at ¶5, Exhibit B; Jones

2   Deposition at 49:5-11; 73:25-74:8.

3          On August 2, 2008, Correctional Officer G. Verbitskiy and other staff were working in

4   Building 16 when they observed plaintiff fighting with three other inmates near his bunk.  Decl.

5   of Rozsko at ¶7, Exhibit C.  Plaintiff claims that he had never seen these other inmates previously

6   and had no prior problems with them.  Jones Deposition at 82:15-23, 83:24-25.  Plaintiff also

7   claims that he fought four, not three, inmate attackers.  Id. at 87:11-22, 93:22-94:4.  Two of the

8   inmates plaintiff was observed fighting with were later identified as Harper and C. Jones.  Decl.

9   of Rozsko at Exhibit C.  During the altercation, the other inmates punched plaintiff and plaintiff

10  fought back by swinging a combination lock in a sock tied to an extension cord, striking Harper

11  in the head.  Id.  Officer Verbitskiy responded to the fight by activating his personal alarm,

12  calling for support, and ordering the inmates to get down.  Id.  The inmates ignored the order and

13  Officer Verbitskiy sprayed his oleoresin capsicum pepper spray into the faces of Harper, C. Jones,

14  and plaintiff in order to obtain their compliance.  Id.  After this event, plaintiff had his weapon

15  removed from him, was taken by staff to the center complex to wash the pepper spray from his

16  face with water, and then taken to the medical center.  Id; Jones Deposition at 100:1-23.  Medical

17  staff examined plaintiff and issued a medical report shortly after the attack stating that plaintiff

18  had a surgical incision on his back and had been sprayed with pepper spray, but that he had no

19  other injuries.  Decl. of Rozsko at Exhibit C (Medical Report of Injury or Unusual Occurrence).

20  To the contrary, plaintiff asserts that he suffered rib fractures as a result of the altercation.  Third

21  Amended Complaint at Exhibit I.

22         A Rules Violation Report was later issued against plaintiff for "Battery on an Inmate with

23  a Weapon"; plaintiff was subsequently found guilty of the charge and received a 360 day

24  reduction in behavioral credits as punishment for the violation.  Id. at Exhibit E; Decl. of Rozsko

25  at ¶¶8-9.  This verdict has not been overturned or rescinded.  Id. at ¶8; Jones Deposition at

26  120:19-21.

27         Plaintiff sent letters to Brown alleging staff misconduct and threats in connection with

28  plaintiff's term in the ASU and requested an investigation into the matter.  Third Amended

6

1   Complaint at 11.  Additionally, Brown was assigned to investigate plaintiff's appeal of the Rules

2   Violation Report finding plaintiff guilty of battery on an inmate with a weapon.  Id. at 12.

3   Plaintiff claims that Brown failed to investigate the allegations against the staff and tried to cover

4   up errors made in the Rules Violation Report.  Id.; Jones Deposition at 146:4-22.  Prior to the

5   attack on August 2, 2008, plaintiff never identified to Brown any threats posed by other inmates.

6   Jones Deposition at 146:2-147:14.

7   II.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

8          Defendants argue that summary judgment is proper with respect to plaintiff's remaining

9   Eighth Amendment failure to protect claims on two grounds.  First, defendants argue that plaintiff

10  proffers no evidence to support a finding that any of the five remaining defendants knew of and

11  consciously disregarded any risk posed to plaintiff's safety by inmates Harper and C. Jones.  ECF

12  No. 48-2 at 6-8.  Second, defendants argue that they are all entitled to qualified immunity for the

13  acts alleged by plaintiff even if plaintiff could establish a violation of his constitutional rights.  Id.

14  at 8-10.

15         The Eighth Amendment prohibits state actors from acting with deliberate indifference to

16  an inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825 (1994).  Prison officials may

17  be held liable for their deliberate indifference in failing to protect a prisoner from violence at the

18  hands of other inmates.  See Collins v. Cnty. of Kern, 390 F. Supp. 2d 964, 973 (E.D. Cal. 2005)

19  (citing Farmer, 511 U.S. at 833) ("Prison officials have a duty to take reasonable steps to protect

20  inmates from physical abuse.").  To recover under a claim based on deliberate indifference, an

21  inmate must prove the existence of two elements.  First, an inmate must show that he was

22  "incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at

23  834.  Second, the inmate must show that defendants acted with "deliberate indifference" to that

24  risk.  Id.  Deliberate indifference is shown by proof that a prison official was "both aware of facts

25  from which the inference could be drawn that a substantial risk of serious harm exists" and that he

26  drew the inference.  Id. at 837.  Evidence showing that the defendant officers acted with

27  negligence or even gross negligence will not suffice to meet this standard; the defendant officials

28  must subjectively know of the risk to plaintiff's safety and consciously disregard that risk.  Id. at

835-37.  In the context of a claim based on an officer's failure to protect the plaintiff from other inmates, it is not required that an officer "'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.'"  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (quoting State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983)).  However, an officer "must have more than a mere suspicion that an attack will occur" before he becomes obligated to take preventative measures.  Id.

Plaintiff claims that defendants all acted with deliberate indifference in failing to prevent the fight that broke out between plaintiff and the other inmates on August 2, 2008 after he had been transferred to a bunk in Building 16 of Facility 3 at CSP-Solano.  Assuming, arguendo, that transferring plaintiff from Building 17 to the lower bunk in Building 16 of Facility 3 constituted a serious risk to plaintiff's health and safety, there is no evidence before the court that any of the defendants were subjectively aware of and deliberately indifferent to the fact that plaintiff was in danger of being attacked by other inmates as a result of this move, a showing that plaintiff must make if his claims are to survive summary judgment.  See Farmer, 511 U.S. at 837.

A.  Fernandez & Rozsko

The undisputed facts show that Rozsko spoke with plaintiff on August 1, 2008 regarding plaintiff's bed movements.  Rozsko Decl. at ¶6.  Rozsko states that plaintiff never identified to Rozsko any inmate that plaintiff believed to be a threat and that plaintiff never expressed any other enemy concerns regarding Facility 3.  Id.  Rozsko also states that Fernandez talked to plaintiff prior to plaintiff's two bed moves and that, each time, plaintiff told Fernandez that he could live in the general population.  Id. at ¶5.

Plaintiff claims that he had talked to Rozsko on August 1, 2008 regarding threats he and another inmate had received from a group of other inmates in Building 17 in connection with plaintiff's bed relocation to that building.  Jones Deposition at 60:4-61:12.  Plaintiff states that he had told both Fernandez and Rozsko on four different occasions that he felt that he was going to be attacked, that he felt unsafe on the yard he was in, and that he wanted to be transferred from that yard.  Id. at 123:15-22.  However, plaintiff admits that he never identified the inmates who

8

1    threatened him to Fernandez and Rozsko with any particularity beyond stating that they were

2    "black inmates."  Id. at 58:21-25.

3           Plaintiff's claims place into dispute the facts surrounding whether plaintiff informed

4    Fernandez and Rozsko of  general threats posed to plaintiff by other inmates.  However, even if

5    plaintiff's version of the facts is taken as true, the court finds that there is no genuine issue of

6    material fact present in the evidentiary record with regard to the issue of whether these two

7    defendants acted with deliberate indifference to an excessive risk to plaintiff's safety in

8    transferring him to the bunk in Building 16.  After plaintiff received the threats in Building 17

9    and told both Fernandez and Rozsko about them and his fear of attack, the two defendants had

10   plaintiff transferred to Building 16, where plaintiff slept until the next day without incident.  Id. at

11   79:24-80:3.  The court finds that the evidence of Rozsko and Fernandez's actions in transferring

12   plaintiff shows that they took reasonable measures to prevent harm to plaintiff in light of the risk

13   posed by the threats plaintiff was receiving from the other inmates in Building 17.  Berg, 794

14   F.2d at 462 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)) (holding that the trier of fact

15   must consider "whether the official(s) took 'prophylactic or preventive measures' to protect the

16   prisoner" in determining whether the officials acted with deliberate indifference); see also

17   Farmer, 511 U.S. at 832 ("[P]rison officials . . . must take reasonable measures to guarantee the

18   safety of the inmates.").

19          Plaintiff states that he received threats from another group of inmates in Building 16 on

20   August 2, 2008 prior to the altercation.  Jones Deposition at 79:9-16.  However, plaintiff admits

21   that he did not have contact with Fernandez or Rozsko on that day until after the attack had

22   already occurred.  Jones Deposition at 79:9-82:2.  Furthermore, plaintiff states that on August 2,

23   2008 he did not request a move from his bunk in Building 16 prior to the altercation.  Id. at 82:3-

24   5.  Based on these undisputed facts, plaintiff fails to show that Fernandez or Rozsko had any

25   knowledge of any risks posed to plaintiff by inmates in Building 16.

26          Plaintiff also claims in his deposition that he should have been removed entirely from

27   Facility 3 because the circumstances surrounding his transfer back to housing in Facility 3 from

28   the ASU created what he perceived to be a "high volatile situation" on the yard.  Jones Deposition

at 61:10-62:13.  However, the evidence shows, at most, that plaintiff had a generalized fear for his safety; he offers no evidence that Fernandez or Rozsko knew of a possibility of specific harm to plaintiff beyond the threats made in Building 17 that they adequately addressed by having plaintiff moved to a different building.  Moreover, plaintiff's contention only brings about a dispute as to the existence of safer alternative courses of action that defendants could have taken, which is insufficient to survive summary judgment.  Berg, 794 F.2d at 462 ("If the evidence only involves a 'dispute over the . . . existence of arguably superior alternatives,' . . . , then the Supreme Court has indicated that the plaintiff has not met his burden and the case should not be presented to a jury.") (citations omitted).  Accordingly, defendants should be granted summary judgment with respect to the claims against Fernandez and Rozsko.

B. <u>Arthur</u>

With respect to Arthur, the undisputed facts show that he viewed and approved plaintiff's initial placement in the ASU on April 10, 2008 pending the Office of Internal Affairs' investigation.  Decl. of Arthur at ¶4.  The evidence further shows that Arthur was a part of the ICC hearing that decided to release plaintiff back into the prison's general population.  Id. at ¶8; Jones Deposition at 27:12-24.  Arthur states that, after the ICC hearing, he had no involvement in plaintiff's building or bunk assignments.  Decl. of Arthur at ¶7.  He further states that he did not have any discussions with plaintiff  prior to the attack  "regarding any threats made by other inmates, enemy concerns or that [plaintiff] felt that he would be attacked by other inmates upon being released from ASU to Facility 3 general population."  Id. at ¶8.  The only claim plaintiff makes in his verified complaint regarding Arthur's knowledge is that Arthur "was made aware that plaintiff was order [sic] back to Building 16 ware [sic] [Arthur's] staff knew [plaintiff] would be attack [sic]."  Third Amended Complaint at 8.  This bare allegation is insufficient to show that Arthur was personally aware of and consciously disregarded an excessive risk to plaintiff's safety prior to the events of August 2, 2008.  See Liberty Leasing Co. v. Hillsum Sales Corp., 380 F.2d 1013, 1015 (5th Cir. 1967) (citing Fed. R. Civ. P. 56(e) and Robin Construction v. United States, 1965, 345 F.2d 610, 613-614 (3d Cir. 1965)) ("[M]ere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment.").  Moreover, even if

10

this claim were taken as true, it would only prove that Arthur's staff was aware of the danger, not Arthur himself.  None of the evidence in the record shows that Arthur was informed of the danger to plaintiff by his staff or that Arthur otherwise knew at any time prior to the attack that plaintiff was in jeopardy of being harmed by other inmates.  Accordingly, summary judgment should be granted to defendants with respect to plaintiff's claim against Arthur.

C. Sisto

Plaintiff's claim against Warden Sisto appears to be based entirely on Sisto's actions in response to a request by plaintiff to investigate a series of threats plaintiff claimed he had received from officers while he was housed in the ASU.  In his verified complaint, plaintiff claims that he sent Sisto a series of letters and that Sisto failed to properly investigate the matter. Third Amended Complaint at 9-10.  However, plaintiff puts forth no evidence connecting the staff threats plaintiff complained about to Sisto with plaintiff's August 2, 2008 altercation with the inmates.  In fact, plaintiff admits in his deposition that he does not have any information linking the inmates who attacked him to correctional staff.  Jones Deposition at 96:22-97:10. Moreover, the uncontroverted evidence shows that Sisto had absolutely no information that plaintiff was at risk of being attacked by inmates in Building 16 as plaintiff's complaints to Sisto only regarded the staff in the ASU.  Therefore, the record fails to show that Sisto was subjectively aware of the risk to plaintiff's safety posed by plaintiff's transfer.  Accordingly, defendants should be granted summary judgment as a matter of law with respect to plaintiff's claim against Sisto.

D. Brown

The evidence proffered by the parties with respect to Brown is as follows.  First, it shows that Brown recommended a review of plaintiff's housing status by an ICC after the Internal Affairs' investigation had resulted in no evidence against plaintiff.  Third Amended Complaint at 37.  Brown was then assigned to investigate plaintiff's complaints against staff in the ASU.  Id. at 11-12; Jones Deposition at 146:2-147:14.  Finally, Brown handled plaintiff's appeal of the Rules Violation Report issued against plaintiff in connection with the altercation involving plaintiff and the other inmates.  Third Amended Complaint at 38, 42-43.  There is no evidence in the record

11

that Brown had any direct involvement in plaintiff's transfer.  Moreover, plaintiff fails to proffer any evidence giving rise to even an inference that Brown knew that plaintiff was at risk of being attacked by any inmates prior to the altercation.  Accordingly, defendants should be granted summary judgment with respect to plaintiff's Eighth Amendment claim against Brown.

III.  <u>CONCLUSION</u>

The evidence before the court fails to establish that any of the defendants acted with deliberate indifference to an excessive risk of harm to plaintiff.  Accordingly, the court finds it unnecessary to address defendants' additional argument that they are entitled to qualified immunity for their actions.  Because plaintiff has failed to offer evidence of triable issues of fact, defendants' motion for summary judgment should be granted in defendants' favor.  Plaintiff's motion styled as "Money Judgment from Arthur, Brown, Fernandez, Rozsko, and Sisto," which is construed by the court as a motion for summary judgment, should therefore be denied on the same grounds.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' April 25, 2013 motion for summary judgment, ECF No. 48, be granted.

2.  Plaintiff's May 6, 2013 motion styled as "Money Judgment from Arthur, Brown, Fernandez, Rozsko, and Sisto," ECF No. 50, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 3, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12